**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MIRAS DUSEVIC,

        CRIMINAL CASE NO. 05-80410
        HON. MARIANNE O. BATTANI

        Defendant.

_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTIONS TO DISMISS INDICTMENT**

**I.   INTRODUCTION**

Before the Court is Defendant's Motion to Dismiss Indictment Based Upon Statute of Limitations and Motion to Dismiss Indictment Based on Constitutional Defects in the Underlying Deportation Order. Defendant seeks dismissal of an indictment that charges he unlawfully reentered the country after having been previously deported.

Dusevic is a citizen and national of Yugoslavia. He was admitted to the United States, along with his brother, four sisters, and mother, as a refugee on August 28, 1973. All subsequently adjusted their status to that of lawful permanent residents in 1976. On August 14, 1992, Dusevic pleaded guilty to Conspiracy to Commit Larceny Under $100 in Macomb County, Michigan, and sentenced to three years of probation and 120 days of incarceration. On April 17, 1994, Dusevic pleaded guilty to Possession of Counterfeit Obligations and Securities in the United States District Court for the Eastern District of Michigan, and placed on three years of probation. On January 30, 1995, Dusevic was found guilty of two counts of misdemeanor

assault and battery in Warren, Michigan, and sentenced to one year of probation.  Subsequently, Dusevic's federal probation was revoked and he was ordered committed to the custody of the United States Bureau of Prisons for eighteen months.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) became law on April 24, 1996.  The AEDPA, *inter alia*, expanded the definition of an aggravated felony to include counterfeiting.  On June 5, 1996, an Order to Show Cause was issued by the Immigration and Naturalization Service (INS) alleging that Dusevic was subject to deportation pursuant to § 241(a)(2)(A)(ii) of the Immigration and Nationality Act (INA) because he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct.  On September 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) became law.  The IIRIRA amended 8 U.S.C. § 1101 to provide that the definition of aggravated felony should apply "regardless of whether the conviction was entered before, on, or after September 30, 1996."  Congress limited the application of that section to actions taken on or after the date of enactment, as well as to aliens that were in exclusion or deportation proceedings as of the effective date of the IIRIRA.  The IIRIRA also repealed § 212(c) of the INA, which provided for discretionary relief from deportation for certain aliens convicted of aggravated felonies.

On August 14, 1996, Dusevic retained Jose Vega to represent him in his deportation proceedings.  On May 14, 1997, the INS filed additional charges against Dusevic, alleging that he was deportable because had been convicted of committing an aggravated felony.  The INS alleged that Dusevic's conviction for possession of counterfeit obligations and securities was an offense relating to counterfeiting, as defined in U.S.C. § 1101(a)(43)(R), and thus, an aggravated

felony under the AEDPA. On May 22, 1997, the Assistant District Court of the INS issued a Service Memorandum of Law stating Dusevic was not entitled to relief under § 212(c) of the INA because of Dusevic's conviction for Possession of Counterfeit Obligations and Securities. On July 16, 1997, Dusevic, through his attorney, filed a brief contesting the characterization of his conviction as an aggravated felony. Dusevic was denied § 212(c) relief. Following the hearing on August 6, 1997, Dusevic was ordered deported. Dusevic reserved his right to appeal. The filing deadline for that appeal was September 5, 1997.

Dusevic failed to file a timely appeal, and the order became final on August 6, 1997. Dusevic alleges that the appeal was not filed because of his attorney's unprofessional conduct. Dusevic subsequently filed a complaint against Vega with the Louisiana Attorney Discipline Board. Thereafter, Dusevic, with the assistance of new counsel, filed a motion to reopen his immigration proceeding. That motion was denied on April 28, 1998, and Dusevic appealed to the Board of Immigration Appeals. However, Dusevic voluntarily departed from the United States on June 16, 1998. Because Dusevic did not pursue his appeal, it was ordered withdrawn by operation of law on November 3, 1998.

Dusevic claims he re-entered the United States on August 15, 1998, by passing through the Detroit-Windsor tunnel using his Michigan driver's license as identification. Moreover, Dusevic alleges that he has lived openly in the United States since that time by using his Social Security Number, filing tax returns, and residing at his pre-deportation address. Dusevic was arrested on April 15, 2005, after immigration officials received an anonymous tip that he was in the country illegally.

Defendant contends that the indictment must be dismissed because it was brought seven

years after he reentered the country, and is thus barred by the five-year statute of limitation found in 18 U.S.C. § 3282(a). Defendant also argues that the underlying deportation order upon which the indictment rests, is invalid because the deportation proceedings were fundamentally unfair. Dusevic alleges that the Immigration Judge committed serious error by retroactively applying the provisions of the AEDPA and IIRIRA to his underlying conviction. Thus, Dusevic alleges that he was eligible for, and would have received, a waiver of deportation. Dusevic also contends that he was deprived of judicial review of the deportation order because of the professional and ethical failures of his retained counsel.

## II. STANDARD OF REVIEW

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(2). The defendant may challenge a defect in the indictment and raise "all defenses and objections which are capable of determination without a trial of the general issue," including such matters as: statute of limitations, lack of jurisdiction, and failure of indictment or information to state an offense. Advisory Committee Note to FED. R. CRIM. P. 12(b)(1) and (2).

## III. ANALYSIS

### A. Defendant's Motion to Dismiss Based Upon the Statute of Limitations

Defendant moves to dismiss the indictment pursuant to FED. R. CRIM. P. 12(b)(2) on the grounds that the indictment was filed beyond the time permitted by the applicable statute of limitations. Defendant was charged with violating 8 U.S.C. § 1326. Section 1326 imposes criminal sanctions upon any previously removed alien that "enters, attempts to enter, or is at any time found in, the United States, unless . . . the Attorney General has expressly consented to such

alien's reapplying for admission" or the alien "was not required to obtain such advance consent." The applicable statute of limitations for such an offense is five years. 18 U.S.C. § 3282(a).

Dusevic alleges that the statute of limitations started to run when he entered the United States in late 1998 by driving through the Detroit-Windsor tunnel. The Government stipulated to the fact that Dusevic has been in the United States since 1998. However, the Government argues that Dusevic entered the United States surreptitiously, and therefore, the statute of limitations did not start to run until he was "found in" the United States when he was arrested for immigration violations on April 15, 2005.

An assertion that a defendant is immune from a criminal charge because it is stale is an affirmative defense that may be waived. U.S. v. Crossly, 224 F.3d 847, 858 (6th Cir. 2000). As an affirmative defense, Defendant must prove by a preponderance of the evidence that the statute of limitations has run. E.g., U.S. v. Solorzano-Rivera, 368 F.3d 1073 (9th Cir. 2004).

In order to determine if the indictment against Dusevic should be dismissed based on the statute of repose, it first must be determined when the offense was completed. See Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 125 S. Ct. 2444, 2450-51 (2005). In this case, Dusevic was charged with being "found in" the United States in violation of 8 U.S.C. § 1326(a)(2). Dusevic argues that the statute begins to run once an alien attempts to enter, enters, or when the Government should have notice of his presence in the United States if he entered the country by use of deception or by bypassing a recognized immigration port of entry. U.S. v. Canals-Jimenez, 943 F.2d 1284 (11th Cir. 1991)("Any alien who seeks admission through a recognized immigration port of entry might be guilty of entering or attempting to enter the United States but not of being found in the United States. Congress added the phrase 'found

in' to alleviate the problem of prosecuting aliens who enter in some illegal manner." ).  In other words, Dusevic contends that "'found in' in Section 1326 applies only to situations in which an alien is discovered in the United States after entering the country surreptitiously by bypassing recognized immigration ports of entry."  Canals-Jimenez, 615 F.2d at 1288.  Dusevic claims that he entered through a recognized port of entry.  Thus, because the year Dusevic alleges reentry is not disputed, Dusevic argues that the Government must prove at trial that he entered the country illegally, because the limitation period for entering illegally has already passed.  Dusevic argues that the Government cannot establish beyond a reasonable doubt that he entered the United States illegally, and therefore, the indictment must be dismissed.

The Second and Eleventh Circuit cases Dusevic has cited to support the restrictive reading of the "found in" phrase of § 1326 are not availing.  The Eleventh Circuit retreated from the Canals interpretation two years later.  U.S. v. Gay, 7 F.3d 200, 202 (11th Cir. 1993) cert. denied, 511 U.S. 1130 ("We conclude that the Canals court was merely using a surreptitious entry as the most obvious example of an illegal entry which would not be detected by immigration officials, and after which an alien who had illegally entered might be 'found in' the United States. . . .  Thus, we conclude that the reference in Canals to surreptitious entry is mere dicta and is not controlling.").  The plain language of § 1326 makes it clear that there are three ways an alien can violate the statute: when an alien, without the Attorney General expressly consenting to such alien's admission, or such alien establishes that he was not required to obtain such advance consent, 1) enters; 2), attempts to enter, or; 3) is at any time found in, the United States.  Thus, the Government has the burden of proof at trial to establish that Dusevic was "found in" the United States without permission of the Attorney General.  It is widely accepted

that the crime of being "found in" the United States is not complete until the alien "'was discovered and identified by the immigration authorities.' U.S. v. Hernandez, 189 F.3d 785, 791 (9th Cir. 1999), cert. denied, 146 L. Ed. 2d 329, 120 S. Ct. 1441 (2000)." U.S. v. Ruelas-Arreguin, 219 F.3d 1056, 1061 (9th Cir. 2000). Accord U.S. v. Mercedes, 287 F.3d 47, 54 (2d Cir. 2002), U.S. v. Almendarez, 1 Fed. Appx. 234, 235 (4th Cir. 2001), U.S. v. Asibor, 109 F.3d 1023,1031-32 (5th Cir. 1997), U.S. v. Herrera-Ordones, 190 F.3d 504, 510 (7th Cir. 1999), U.S. v. Diaz-Diaz, 135 F.3d 572, 577 (8th Cir. 1998), U.S. v. Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999).

> Where a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is "found" is a continuing offense because it is "an unlawful act set on foot by a single impulse and operated by an unintermittent force," . . . . See Midstate Horticultural Co., 306 U.S. at 166. That "force" is the alien's knowledge that his entry is illegal due to his prior deportation, and his apparent intent to remain in the United States.

U.S. v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996). This Court agrees that the plain language of the statute does not require surreptitious entry or entry through deception in order for an alien to be "found in" the United States in violation of 8 U.S.C. § 1326(a)(2). Even if Dusevic did not enter surreptitiously or through the use of deception, he was not discovered and identified by immigration officials at the time he entered. Therefore, Dusevic has failed to show that the indictment should be dismissed.

Dusevic also argues that because he filed tax returns, used his social security number and driver's license since 1998, the Government had notice of his presence in this country. Thus, Dusevic argues that through the exercise of reasonable diligence, he should have been "found in" the United States much earlier, and therefore, the statute of limitations has expired. However, "a previously deported alien is 'found in' the United States when his physical presence is

discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities." Santana-Castellano, 74 F.3d at 598 (concluding that awareness of unlawful presence was not attributable to immigration authorities until INS agent spoke to defendant). Accord U.S. v. Rivera-Ventura, 72 F.3d 277, 281 (2d Cir. 1995) (stating that date of section 1326 offense depends on "acts and knowledge of the federal authorities"), U.S. v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996) (concluding that awareness of unlawful presence was not attributable to immigration authorities until INS agent spoke to defendant), U.S. v. Gomez, 38 F.3d 1031, 1037-38 (8th Cir. 1994) (examining issue of constructive knowledge where INS had been in actual possession of fingerprints and other information adequate to determine illegal status), Bencomo-Castillo, 176 F.3d at 1302 (rejecting contention that INS had constructive knowledge when local police sent fingerprints to FBI). Cf. DiSantillo, 615 F.2d at 135 (discussing lack of diligence by INS in discovering defendant who had made a recorded entry through an official port of entry). Nothing in the record suggests that the immigration authorities could have discovered Dusevic any earlier than they did, nor is there evidence suggesting that the INS engaged in dilatory investigatory practices. There were over 108 million individual tax returns filed in 1998, and 128 million in 2003.[1] Internal Revenue Service Data, available at, http://www.taxfoundation.org/taxdata/show/250.html. Moreover, there were approximately 180 million licensed drivers in the United States in 1999.[2] U.S. Department of Transportation Federal Highway Administration, Office of Highway Policy

---

[1] 2003 is last year which compiled data is available.

[2] 1999 is last year which compiled data is available.

Information Report, available at, http://www.fhwa.dot.gov/ohim/hs99/dlpage.htm.  This Court does not believe, nor has Dusevic pointed to any authority that suggests, that the immigration authorities have an affirmative duty to search individual tax returns, or state and local government driving records in order to discover illegal aliens.  However, the record does demonstrate that INS agents investigated Dusevic's identity and status, with appropriate diligence, once they learned of his presence in the United States.  Therefore, Dusevic cannot show that the indictment was not timely filed.

### B. Defendant's Motion to Dismiss Based Upon Constitutional Defects in the Underlying Deportation Order

Dusevic also claims that the underlying deportation proceeding was fundamentally unfair because his conviction for possession of counterfeit obligations and securities was not an aggravated felony at the time of his guilty plea.  Dusevic also claims that he was deprived of an opportunity for judicial review of the deportation order because of numerous ethical and professional failures of his retained counsel.

In order to collaterally attack a deportation order, an alien must demonstrate that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  Thus, because of the conjunctive "and," if the alien fails to establish any one of the requirements listed in § 1326(d), then the collateral attack will also fail.

#### 1. Fundamental Fairness

Dusevic argues that the deportation was fundamentally unfair for three reasons: 1) the failure to raise the retroactivity argument evidences ineffective assistance of counsel; 2) that an erroneous application of law is the type of defect that automatically renders a proceeding fundamentally unfair, and; 3) that he was denied due process because he was misinformed about his eligibility for § 212(c) relief.  A deportation proceeding is fundamentally unfair if the alien's due process rights are violated and he suffers prejudice as a result of the violation.  See e.g. U.S. v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998).

### a. Due Process

Dusevic contends that failure to contest the retroactive application of the IIRIRA and AEDPA establishes that his counsel's representation fell below an objective standard of reasonableness.  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  However,

> [b]ecause "[a] deportation proceeding is a purely civil action,". . . an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment.  "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." Huicochea-Gomez v. INS, 237 F.3d 696, 699 (6th Cir. 2001).  Ineffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment "only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Ramirez-Durazo v. INS, 794 F.2d 491, 499-500 (9th Cir. 1986).

Denko v. I.N.S., 351 F.3d 717, 724 (6th Cir. 2003).  In order to determine whether Dusevic was prevented from reasonably presenting his case and rendering the hearing fundamentally unfair, it must first be determined what Fifth Amendment Due Process are afforded in deportation hearings.

The Supreme Court has held that in civil deportation proceedings, under the Fifth Amendment, an alien "is entitled to notice of the nature of the charge and a hearing at least

before an executive or administrative tribunal . . ." and a "fair opportunity to be heard." Kwong Hai Chew v. Colding, 344 U.S. 590, 597-98 (1953), see also U.S. v. Mendoza-Lopez, 481 U.S. 828, 839, 841 (1987). The Sixth Circuit has iterated this holding: "To constitute fundamental unfairness, however, a defect in the removal *proceedings* 'must have been such as might have led to a denial of justice'" Huicochea-Gomez, 237 F.3d at 699 (citation omitted)(emphasis added). "The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy. . . . Instead, the courts must evaluate the particular circumstances and determine what *procedures* would satisfy the minimum requirements of due process . . . ." Landon v. Plasencia, 459 U.S. 21, 34-35 (1982)(emphasis added).

Further, "in order to demonstrate that the Due Process Clause has been violated, Petitioner must establish that she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause in the first place. See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)." Ashki v. I.N.S., 233 F.3d 913, 921 (6th Cir. 2000). Aliens "ha[ve] no constitutionally-protected liberty interest in obtaining discretionary relief from deportation." Id. A discretionary waiver is an "'act of grace' that rests in the 'unfettered discretion' of the Attorney General. . . . This is true even where the state 'frequently has granted the relief sought." Id. See also, Hanna v. Gonzales, 128 Fed. Appx. 478, 480-81 (6th Cir. 2005), Al Hamid v. Ashcroft, 336 F.3d 465, 469 (6th Cir. 2003), Huicochea-Gomez, 237 F.3d 696, 700 (6th Cir. 2001), U.S. v. Wilson, 316 F.3d 506, 510 (4th Cir. 2002), U.S. v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002). Thus, an alien has

11

procedural Due Process rights in the deportation hearing, and it must be determined if Dusevic was denied those rights.

Dusevic first claims that the deportation hearing was fundamentally unfair because his Due Process rights were denied when his retained counsel failed to contest the retroactive application of the definition of "aggravated felony" in his hearing. Dusevic's attorney filed a brief on July 16, 1997, that advanced the argument that possession of counterfeit securities is not an aggravated felony. Crude as it is, the brief contested on the merits the application of the definition of "aggravated felony" to Dusevic's prior conviction. Although, Vega did not contest the retroactive application of the definition, an application for a discretionary waiver of deportation was filed.[3] Thus, this is not a case where an alien's attorney or the Immigration Judge did not inform him of the availability of discretionary relief; rather, his attorney filed for, and argued that, Dusevic was eligible for a discretionary waiver. Therefore, it cannot be said that his attorney's representation rose to the level of rendering the proceeding so fundamentally unfair that Dusevic was prevented from reasonably presenting his case.

Next, Defendant argues that the proceeding was fundamentally unfair because the law was erroneously applied. See U.S. v. Girosky-Garibay, 176 F. Supp.2d 705, 711 (W.D. Tex. 2001). The Supreme Court has held that the definition of aggravated felony in the IIRIRA and the AEDPA cannot be retroactively applied. The Court held that § 212(c) relief is available to aliens who entered into a plea agreement prior to the effective date of the IIRIRA, and "would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." INS

---

[3] The waiver was denied as evidenced by the briefing on the subject of eligibility, and the order denying the waiver.

v. St. Cyr, 533 U.S. 289, 326 (2001).  However, the question remains whether misapplication of the law results in a due process violation that renders the deportation hearing fundamentally unfair.  The holding in Girosky-Garibay that Dusevic cites to support his argument, was later overturned by the Fifth Circuit:

> . . . the Fifth Circuit has now ruled that the improper retroactive application of the IIRIRA amendments repealing 212(c) relief is  not a procedural defect that gives rise to a violation of due process.  The Fifth Circuit clearly acknowledged that the IJ's understanding of 212(c) relief in Lopez-Ortiz was an erroneous interpretation of the law, but made no suggestion that such an erroneous interpretation, in and of itself, constitutes fundamental unfairness.  Because the Court is bound by Fifth Circuit precedent on this issue, it cannot hold otherwise.  Therefore, without a showing that the IJ or the BIA committed any procedural errors in the instant cause that violated his due process rights, Defendant cannot prevail.

U.S. v. Sotelo-Mendoza, 234 F.Supp. 2d 671, 680 (W.D. Tex. 2002) aff'd by U.S. v. Sotelo-Mendoza, 76 Fed. Appx. 567 (5th Cir. 2003), cert. denied by Sotelo-Mendoza v. U.S., 540 U.S. 1199 (2004).  Dusevic cites no other authority that suggests the misapplication of the law by an Immigration Judge deprives an alien of Due Process.  Therefore, Dusevic has failed to show that a misapplication of the law deprived him notice of the nature of the charge, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard.  See Kwong Hai Chew, 344 U.S. 590, Landon v. Plasencia, 459 U.S. 21,  Mendoza-Lopez, 481 U.S. 828, Huicochea-Gomez, 237 F.3d 696.

Finally, Dusevic argues that he was denied due process because he was misinformed about his eligibility for § 212(c) relief.  Dusevic is actually arguing that he was not adequately informed about a future change in the interpretation of the law, not that he was misinformed of

13

his eligibility for an existing form of discretionary relief.[4]  See U.S. v. Rodriguez, 420 F.3d 831, 834 (8th Cir. 2005).  Dusevic was not denied Due Process in his deportation hearing because he was misinformed about a future change in the interpretation of the law because such an error is not a procedural defect that rendered the deportation hearing fundamentally unfair.

          b.      Prejudice

Even if Dusevic could establish that the deportation hearing deprived him of Due Process, he cannot establish the alleged Due Process deprivation prejudiced him.  In order to prevail, Dusevic must establish that but for Vega's legal advice, he would have been entitled to remain in the United States.  Huicochea-Gomez, 237 F.3d at 699-700.  Dusevic contends that he would not have been deported had the Immigration Judge not denied his request for a waiver of deportation.  However, it is too speculative for Dusevic to claim that but for his attorney's legal advice, he would have been granted discretionary relief.  This is highlighted by the fact that Dusevic faced deportation not only because a crime he was previously convicted of became an aggravated felony after passage of the IIRIRA, but because he was convicted of two or more crimes of moral turpitude.  Dusevic argues that he had a substantial likelihood of success in attaining a waiver because just over fifty percent of such applications were granted between 1985 and 1989.  St Cyr, 533 U.S. at 296, n.5.  However, "[w]ithout any indication that the successful applicants were similarly situated . . . the conclusion that he had at least a 50% chance

---

[4] The Immigration Judges's retroactive application of the law was widely understood to be correct at the time by virtue of the Board of Immigration Appeals decision in Matter of Soriano, 21 I & N Dec. 516, 1996 WL 426888 (BIA 1996).  This decision was later supported by a February 21, 1997, United States Attorney General Opinion that interpreted the AEDPA and IIRIRA in a way that foreclosed discretionary § 212(c) relief to aliens in deportation proceedings that were formerly convicted of crimes that were reclassified under the AEDPA and IIRIRA as "aggravated felonies."  21 U.S. Op. Off. Legal Counsel 1, (1997).

of receiving a discretionary waiver is pure speculation, if not actually misleading." U.S. v. Aguirre-Tello, 3535 F.3d 1199, 1210 (10th Cir. 2004)(*en banc*). Section 212(c) "does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants the relief sought. The alien bears the burden of demonstrating that his application merits favorable consideration." De Gonzalez v. INS, 996 F.2d 804, 807 (6th Cir. 1993).

> The equities that an applicant for relief under section 212(c) must bring forward will depend upon the nature and circumstances of each particular case. As the negative factors present in a case become more serious, the applicant faces a heightened requirement "to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." Id. at 585. The necessity of demonstrating unusual or outstanding equities may be mandated by a single serious crime or "because of a succession of criminal acts, which together establish a pattern of serious criminal misconduct." Buscemi, 19 I. & N. Dec. at 633.
> Further, where an applicant for relief under section 212(c) has a criminal record, the applicant "will ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion." Id. at 634.

Jabbar v. INS, 1993 U.S. App. LEXIS 22843 at *16 (6th Cir. 1993). Therefore, in light of the facts and circumstances of his case, it is too speculative for Dusevic to claim that, but for the failure to consider the merits of his § 212(c) request, he would not have been deported, and Dusevic has failed to established that he was prejudiced as a result.

Because Dusevic cannot establish the deportation hearing was fundamentally unfair, or that he was prejudiced by an alleged deprivation of his due process rights, the remaining requirements for collaterally attacking a prior deportation order will not be discussed.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Indictment Based Upon Statute of Limitations and Motion to Dismiss Indictment Based on Constitutional Defects in the Underlying Deportation Order are **DENIED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: November 23, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Harold Gurewitz and Susan Gillooly on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK